AUTHORIZED AND APPROVED/DATE: s/Drew E. Davis 3/23/2026

# UNITED STATES DISTRICT COURT

### for the

_____ District of _____

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

)
)
)
)
)
)

Case No.        150

**FILED**

3:12 pm, Mar 24, 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
By: AC, Deputy Clerk

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*                         *Offense Description*

The application is based on these facts:

❑ Continued on the attached sheet.

❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 24, 2026

_____
*Judge's signature*

City and state: _____

_____
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

<table>
<tr>
<td>

AN APPLE IPHONE 16E IN A BLACK CASE, A BLUE MOTOROLA RAZR CELLPHONE IN A CLEAR CASE, AND A RED MOTOROLA QUAD PIXEL CELLPHONE IN A CLEAR CASE CURRENTLY LOCATED AT THE OKLAHOMA CITY POLICE DEPARTMENT WITHIN THE WESTERN DISTRICT OF OKLAHOMA

</td>
<td>

Case No.  M-26- 150    -CMS

</td>
</tr>
</table>

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Sarah King, a Special Agent with the Federal Bureau of Investigation (FBI), having been duly sworn, depose and state as follows:

**INTRODUCTION AND OFFICER BACKGROUND**

1.    I am a Special Agent with the FBI and have been since March 2017.  As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in, *inter alia*, the Controlled Substances Act, Title 21, United States Code.  I am currently assigned to the Oklahoma City Division of the FBI. Since becoming an FBI Special Agent, I have conducted multiple investigations targeting large criminal enterprises, some of which involved the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846.

2.      Since becoming a Special Agent, I have conducted multiple investigations targeting drug trafficking organizations, some of which involved the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. I have experience in the methods used in drug trafficking investigations, including but not limited to, debriefing cooperating witnesses and cooperating sources, the preparation and execution of search warrants, and making arrests. In light of this experience, I know the following:

a.      I am aware of the methods in which drug couriers and distributors associated with Drug Trafficking Organizations (DTOs) often use electronic devices, including computers, tablets, cell phones, and other electronic storage devices, to communicate and coordinate drug transactions and execute electronic transactions which can, in turn, create automatic records and documentation of the drug transactions;

b.      I am aware that it is particularly common for individuals engaged in the sale and distribution of illegal drugs to use electronic devices to track and document financial transactions;

c.      I am aware that individuals engaged in the sale and distribution of illegal drugs will frequently keep contact information and other evidence of their financial and drug dealings with DTOs on cellular phones, computers, tablets, and other storage devices that they often keep on or near their person;

d.      I am also aware that individuals engaged in the sale and distribution of illegal drugs will often use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging; and

e.      I am aware that individuals involved in transporting illegal

2

drugs will often use electronic devices to communicate with the individuals for whom they are transporting the drugs, including coordinating addresses for pickups and deliveries, communicating about status of the transportation, especially over long distances, and communicating to confirm successful deliveries.

3.     This Affidavit is based upon my personal investigation and upon information received from other law enforcement officers and agents and may not be inclusive of all evidence or information available or of all facts known to me relative to this investigation.  Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.     I make this Affidavit in support of an application for a search warrant authorizing the examination of three cellular electronic devices: (1) an Apple iPhone 16E in a black case seized from Sebastian Isaac Blanco Lopez during a traffic stop; (2) a blue Motorola Razr cellphone in a clear case seized during the execution of a search warrant at 2801 SW 42nd Street, Apt. #24, Oklahoma City, Oklahoma; and (3) a red Motorola Quad Pixel cellphone in a clear case seized during the execution of a search warrant at 2801 SW 42nd Street, Apt. #24, Oklahoma City, Oklahoma, as further described in **Attachment A**, and collectively referred to as the **SUBJECT DEVICES**, for evidence of a drug conspiracy in violation of 21 U.S.C. § 846.

5.    The **SUBJECT DEVICES** are currently securely stored at the Oklahoma City Police Department within the Western District of Oklahoma. The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying electronically stored data particularly described in **Attachment B**.

## PROBABLE CAUSE

6.    Beginning in February 2025, law enforcement began an investigation into a drug trafficking organization (DTO) based in Mexico that was involved in distributing illegal controlled substances in the Oklahoma City metro area.

7.    Beginning in early March 2026, investigators identified an unknown male subject who was driving a silver Cadillac SRX, bearing Oklahoma tag TAX321, making several trips per day to various locations around Oklahoma City, Oklahoma.   The unknown subject was observed regularly visiting repeat locations to meet with other unknown subjects for very short amounts of time. Based on the surrounding circumstances and my training and experience, the subject appeared to be conducting drug transactions during these meetings.

8.    On March 17, 2026, law enforcement located the Cadillac parked in the back of an apartment complex located at 2801 SW 42nd St., Oklahoma City, Oklahoma.   There, officers observed the Cadillac leaving the complex

4

driven by an unknown Hispanic male.  Later that afternoon, officers observed the Cadillac traveling east on SW 42nd St from S May Ave., Oklahoma City, Oklahoma.  The Cadillac parked on the west end of the apartment complex and the driver—and sole occupant—got out of the car and walked upstairs to Apartment Number 24.  Law enforcement observed the driver unlock the door and go inside the apartment.

9.      On March 18, 2026, at approximately 1:30 p.m., officers observed what, from a distance, appeared to be the same, or similar looking, Hispanic male exit Apartment Number 24 and get into the same silver Cadillac bearing Oklahoma tag TAX321.  The Cadillac then left the complex and traveled south on S. May Ave. in Oklahoma City, Oklahoma.  As officers followed the Cadillac, they observed the driver fail to signal his intention to turn as the Cadillac turned west onto SW 125th St from S. May Ave.  Officers made contact with the driver—and sole occupant of the Cadillac—and it was determined that he did not have a valid driver's license.  The driver, later identified as Sebastian Isaac Blanco Lopez (date of birth of XX/XX/2007), was then placed under arrest for not having a valid state driver's license.

10.      Officers requested a drug dog for the Cadillac, and a drug dog from the Oklahoma City Police Department subsequently arrived on the scene. The CLEET certified drug dog then conducted an open-air sniff around the vehicle and positively alerted to the odor of narcotics.  Officers subsequently performed

5

a probable cause search of the Cadillac. Inside the center console, officers located two separate baggies containing an off-white substance that field-tested positive for the presence of fentanyl: one baggie weighed approximately 13.1 grams (total package weight); the other baggie weighed approximately 13.6 grams (total package weight).

11.    Based on my training and experience, I know that drug dealers often package illegal substances in multiple baggies in preparation for distribution.

12.    On Mr. Blanco Lopez's person was an iPhone 16E in a black case (**SUBJECT DEVICE 1**). The iPhone 16e was seized and booked into the Oklahoma City Police Department's property room.

13.    After the traffic stop was completed, a state search warrant was issued for the apartment where Sebastian Isaac Blanco Lopez had been observed entering and exiting at 2801 SW 42nd Street, Apartment #24, Oklahoma City, Oklahoma. It should be noted that law enforcement had maintained surveillance on the apartment from the time Mr. Blanco Lopez left on March 18, 2026, before being stopped for a traffic violation, to the time the apartment was searched. During that time, law enforcement never observed anyone else enter or exit the apartment.

14.    Inside the one-bedroom apartment, law enforcement located the following:

6

a. Inside a drawer by the bathroom sink:

    i. approximately nineteen (19) plastic baggies containing a white rock-like substance that field-tested positive for fentanyl and had a combined total package weight of approximately 151.7 grams;

    ii. approximately $9,310 in U.S. currency secured with rubber bands;

    iii. a digital scale and drug ledger; and

    iv. numerous plastic sandwich bags used to make tear-offs.

b. On the living room couch, officers found a public storage unit receipt for a unit in Oklahoma City in the name of Sebastian Isaac Blanco Lopez.

c. In the bedroom:

    i. a digital scale in the bedroom closet;

    ii. a pair of shoes that had approximately $400 in U.S. currency inside them; and

    iii. two cellphones on top of the mattress:

        1. one cellphone was a blue Motorola Razr in a clear case (**SUBJECT DEVICE 2**);

        2. the other cellphone was a red Motorola Quad Pixel in a clear case (**SUBJECT DEVICE 3**).

15.    While searching the apartment, officers saw no signs of any other individuals living there and never observed anyone else entering or exiting the apartment.

7

16.    Based on my training and experience, I know that those engaged in drug conspiracies often use cellular devices to plan and coordinate drug trafficking operations and to communicate with other co-conspirators. These cellular devices often contain contact lists, call logs, messages, photographs, videos, and other notes which relate to trafficking and distributing controlled substances.

17.    Based on my training and experience, I know that those engaged in drug trafficking commonly use multiple cellphones to coordinate drug trafficking operations to evade law enforcement by limiting conversations on any one particular device.

18.    Accordingly, there is probable cause to believe that the **SUBJECT DEVICES** will contain evidence of a drug conspiracy within the Western District of Oklahoma, and elsewhere.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Cellular phones, and specifically iPhones, have the ability to: serve as a wireless telephone, digital camera, portable media player, and GPS navigation device, access the Internet, and use manufacturer installed, as well as downloaded, applications to conduct basic computing and data services. Similarly, things that have been viewed via the Internet are typically stored for some period of

8

time on iPhones. This information can sometimes be recovered with forensic tools.

20. There is probable cause to believe that things that were once stored on the **SUBJECT DEVICES** may still be stored there, at least for the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months, or even years, after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer or cellular device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer or cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery."

    c. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

21. *Forensic evidence*. As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the

9

warrant, but also forensic evidence that establishes how the **SUBJECT DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether

10

data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how that particular device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICES** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

23.    *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.    In light of the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the

11

**SUBJECT DEVICES** described in **Attachment A** to seek the items described

in **Attachment B**.

Respectfully submitted,

SARAH KING
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 24th day of March, 2026.

CHRIS M. STEPHENS
United States Magistrate Judge
Western District of Oklahoma

12

## ATTACHMENT A

The property to be searched is:

1. a black Apple iPhone 16e in a black case, seized from Sebastian Isaac Blanco Lopez during a traffic stop;

2. a blue Motorola Razr cellphone in a clear case, seized during the execution of a search warrant at 2801 SW 42nd Street, Apt. 24, Oklahoma City, Oklahoma; and

3. a red Motorola Quad Pixel cellphone in a clear case, seized during the execution of a search warrant at 2801 SW 42nd Street, Apt. 24, Oklahoma City, Oklahoma,

(hereinafter the **SUBJECT DEVICES**).

The **SUBJECT DEVICES** are currently in possession of the Oklahoma City Police Department located at 700 Colcord Dr., Oklahoma City, Oklahoma, within the Western District of Oklahoma, and are shown below.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the

custody and control of attorneys for the government and their support staff for

their independent review.



**1.    Black Apple iPhone 16e in a black case (pictured above)**



**2.    Blue Motorola Razr cellphone in a clear case (pictured above)**

 

3.   **Red Motorola Quad Pixel cellphone (pictured above)**

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

1.    All records on the **SUBJECT DEVICES**, described in **Attachment A**, that relate to violations of 21 U.S.C. § 846, including:

   a. any information recording Sebastian Isaac Blanco Lopez's schedule or travel;

   b. lists of customers and co-conspirators, and related identifying information including images, videos, and audio recordings;

   c. records of communications with customers, co-conspirators, or others regarding the possession, transportation, or distribution of controlled substances, whether such communications be a telephone call, text message (e.g., SMS or MMS), instant message, audio message, video message, or communication through an application stored on the **SUBJECT DEVICES**;

   d. images or videos of drugs;

   e. records detailing the types, quantity, and prices of drugs as well as dates, places, and amounts of specific drug-related transactions;

   f. any information related to the sources of drugs, including: names, addresses, phone numbers, or any other identifying information;

   g. any information related to the planning and coordination of transporting drugs;

   h. any audio recordings, pictures, video recordings, or still-captured images on the **SUBJECT DEVICES** related to the purchase, sale, transportation, storage, or distribution of drugs or the collection, transfer, or laundering of drug proceeds;

   i. all bank records, checks, credit card bills, account information, and other financial records;

   j. all records, including internet usage history, related to drug trafficking, including package tracking, electronic or internet mail communications, and electronic payment receipts;

k. any location data related to the acquisition, transportation, or distribution of drugs;

l. evidence of user attribution showing who used or owned the **SUBJECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, associated accounts, documents, and browsing history:

  1. records of Internet Protocol addresses used,

  2. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, and

  3. photographs, logs, phonebooks, saved usernames and passwords, and documents; and

m. contextual information necessary to understand the evidence described in the attachment.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored on the **SUBJECT DEVICES**.